UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| JAMIE CROMWELL, | ) | CIV. 06-5009 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| LINDA S. McMAHON,[1] Acting Commissioner, Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Jamie Cromwell (the Claimant), moves for reversal of a final decision of the Commissioner of the Social Security Administration (the Commissioner) decision that he was not disabled and terminating supplemental security income benefits.  The Commissioner opposes the motion.  The Court reverses and remands the Commissioner's decision denying benefits.

**I.  PROCEDURAL BACKGROUND**

The Claimant, born June 9, 1985, was awarded children's Supplemental Security Income (SSI) benefits on November 28, 1989.  At that time, the Claimant was found to have "speech and language developmental delays, gross motor skills delays, [and] borderline intelligence."  (TR 53).  A redetermination hearing was commenced in July 2003, after the Claimant had turned eighteen.  On December 2, 2003, the Claimant was notified that he no longer was disabled and that his last SSI payment would be on February 1, 2004.  (TR 308-10).  On February 2, 2004, the

---

[1] On Jan. 20, 2007, Linda S. McMahon became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Linda S. McMahon is substituted for Commissioner Jo Anne B. Barnhart as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Claimant requested a reconsideration of the cessation of his benefits. The Claimant appeared at a hearing regarding the reconsideration on May 13, 2004. On June 10, 2004, the hearing officer issued an affirmation of the cessation of benefits. The Claimant filed a timely request for a hearing before an administrative law judge (ALJ) on July 12, 2004. (TR 30). A hearing was held before the ALJ on March 29, 2005, in Rapid City, South Dakota. The Claimant, Dr. Michael Enright, Ph.D., and Jerry Gravatt, CRC appeared at the hearing.

In his decision, dated June 13, 2005, the ALJ found that the Claimant was capable of performing jobs that exist in significant numbers in the national economy and thus was not eligible to receive SSI benefits. (TR 29). The Claimant appealed the decision, and the Appeals Council denied his request for review, despite the Claimant's attempt to present new evidence. The June 2005 decision is, therefore, the final decision of the Commissioner. This appeal followed.

## II.  FACTUAL BACKGROUND

The Claimant was born on June 9, 1985, and suffers from mental and physical deficits as a result of his premature birth. At age 13, the Claimant was diagnosed with mild mental retardation and a full-scale IQ of sixty-one. (TR 495). Additionally, the Claimant has had a history of ear infections and migraine headaches. (TR 329, 352-86). It is not disputed that the Claimant qualified for disability benefits under Title XVI child disability standards prior to December 1, 2003. The Claimant has a high school education.

The Claimant was assessed psychologically on February 1, 2003, by Curt D. Hill, Ph.D. (TR 476-78). The assessment revealed that the Claimant had a full-scale IQ of eighty-five. (TR 477). Dr. Hill also concluded that the Claimant's intellectual abilities were in the low average

range and that he had an impaired ability to recall information and low average processing speed. (TR 478). A Wechsler Memory Scale III test was also administered. Dr. Hill concluded that the Claimant's Wechsler Working Memory Index was sixty-five, which is in the first (lowest possible) percentile. (TR 477). "Working Memory is the ability to hold information in your mind temporarily while you perform a mental manipulation with that information." (TR 478). Dr. Hill also reported that, "Jamie struggles with focusing attention and remembering material." (TR 478).

The Claimant was also evaluated by Dr. Greg Swenson, Ph.D., a psychologist, on October 31, 2003. (TR 385-89). Dr. Swenson reported that the Claimant's memory function tests "produced scores that were significantly below average. Measures of auditory and visual memory were in the borderline range, while [the Claimant's] Wechsler General Memory Index, a composite measure of short term memory, was significantly below this range at 62." (TR 388). Dr. Swenson, like Dr. Hill, reported that the Claimant's General Memory Index was in the first percentile. (TR 387). In his summary, Dr. Swenson stated that the Claimant's "immediate and short term memory are significantly below average." (TR 389).

At the March 29, 2005, hearing before the ALJ, neither Dr. Hill or Dr. Swenson testified. Michael Enright, Ph.D., who had reviewed the Claimant's records, including the reports of Dr. Hill and Dr. Swenson, and who completed a Psychiatric Review Technique form on behalf of the Social Security Administration, did testify. Dr. Enright never examined the Claimant. After reviewing the work of Dr. Hill and Dr. Swenson, Dr. Enright concluded that the Claimant suffered from no restrictions, not even slight, on his ability to carry out short, simple instructions. (TR 479). Dr. Enright concluded that the totality of Dr. Swenson's report indicated that the

3

Claimant had no memory problems, despite his General Memory Index of sixty-two, because Dr. Swenson had stated that the Claimant was able to comprehend the test's instructions and was able to focus and maintain his concentration during the test. (TR 386-87; 499-500). In response to questioning regarding the findings, Dr. Enright indicated that the same test should not be given to the same patient within two years, because of a "learning effect" that invalidated both tests.[2] (TR 501-502).

      The Claimant also testified at the ALJ hearing. The Claimant stated that he worked part-time as a shelf stocker during high school. The Claimant testified that he had worked at a computer store for two months, trying to learn how to repair computers, but that he had difficulty concentrating. The Claimant testified that he had worked at Blockbuster, stocking movies, helping customers, and cashiering. He stated that he suffered from migraine headaches and that his typical day involved watching television, going to work, playing computer games, and spending time with friends.

      Jerry D. Gravatt, a vocational rehabilitation counselor, also testified at the ALJ hearing. Gravatt testified that a younger individual with a high school education and no prior relevant work experience that amounted to substantial gainful activity could perform unskilled jobs such as bench assembler and fast food worker. (TR 517-18). Gravatt also stated that an individual who had marked limitation in their abilities to understand, remember, and carry out short, simple instructions, would not be able to find work. (TR 518-19).

---

[2] Dr. Enright does not explain in his testimony why Dr. Hill's results, nine months prior to Dr. Swenson's, would be affected, let alone be invalidated, by a "learning effect." While a reason may well exist, it is not evident in the record.

A.     **ALJ Decision**

On August 19, 2004, the ALJ issued his decision. The ALJ applied the familiar five-step sequential analysis.[3] At the first step, the ALJ found that although the Claimant had worked since he was eighteen, his earnings did not constitute substantial gainful activity. (TR 20). At the second and third steps, the ALJ found that the Claimant had mental retardation that was severe but did not meet an impairment listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1. (TR 20, 22). At the fourth step, the ALJ found that the Claimant retained:

> [a] residual functional capacity with no restriction in an ability to lift, carry, stand or sit, who is able to interact with family and friends, whose ability to understand and remember simple one-step instructions is not significantly limited and who has moderate limitations ( i.e., there is moderate limitation in this area but the claimant is still able to function satisfactorily) in an ability to understand, remember, and carry [out] detailed instructions.

(TR 27). The ALJ determined that the Claimant had no past relevant work, but because of his residual functional capacity and his vocational profile as a younger person with a high school education, he could perform unskilled jobs that existed in significant numbers in the national economy, specifically, bench assembler and fast food worker. (TR 28-29).

---

[3]The five-step sequential analysis as outlined by the Eighth Circuit is: (1) whether the claimant is presently engaged in a "substantial gainful activity;" (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998).

The ALJ discounted Dr. Swenson's opinion for several reasons.  The ALJ accepted and gave great weight to Dr. Enright's conclusion  regarding Dr. Swenson's observations that the Claimant was able to understand the instructions of the Wechsler Memory Scale III test.  (TR 25).  The ALJ also gave great weight to Dr. Enright's observation that Dr. Swenson's opinions may not be valid because of the "learning effect."  (TR 25).  Although the ALJ accorded "Dr. Enright's opinions with substantial weight," he did not analyze Dr. Hill's opinions in great depth, other than to note that he considered Dr. Hill's opinion more convincing than Dr. Swenson's.  (TR 25).

The ALJ also questioned the credibility of the Claimant.  The ALJ found that the Claimant's claims were "not entirely credible."  (TR 25).  The ALJ found that the Claimant made inconsistent statements concerning his disability.  (TR 26).  The ALJ concluded that the Claimant described daily activities that were not consistent with what one would expect from someone with his claimed disability.  (TR 26).

**B.** **Appeals Council**

After the ALJ hearing, the Claimant submitted additional evidence to the Appeals Council.  Among this new evidence was a letter from Dr. Swenson, dated June 30, 2005, in which he responded to Dr. Enright's testimony regarding the Claimant's memory.  Swenson stated that his October 30, 2003, evaluation "may have been misunderstood or misinterpreted by the Office of Hearing and Appeals."  (TR 485).  Dr. Swenson explained that the passage that Dr. Enright relied upon to conclude that the Claimant had no restrictions to carry out short, simple instructions was merely a statement concerning the Claimant's ability to have the test administered to him, and was not conclusory regarding his memory or ability to remember and

carry out short, simple instructions in general. (TR 486). According to Dr. Swenson, whoever administers the Wechsler test must first verify that the person taking the test understands the instructions *of the test*, be able to follow the instructions *of the test*, and be able to focus on the task of completing *the test* in order for the results to be valid. (TR 486). Dr. Swenson added that he included this statement to verify that the Claimant satisfied the criteria needed to take the test and that he did not intend the statement to be conclusory as to the Claimant's memory function, as Dr. Enright had read it. (TR 486). Dr. Swenson also stated that most psychologists would find the ALJ's conclusions unacceptable and that a General Memory Index score in the first percentile is low and indicates impairment. (TR 487). Dr. Swenson indicated that it was an oversight for him not to have diagnosed the Claimant with amnestic disorder in October 2003.

      Dr. Swenson also responded to Dr. Enright's argument that a "learning effect" affected Dr. Swenson's opinion. Dr. Swenson first pointed out that if the Claimant had learned from the test administered nine months earlier by Dr. Hill, his score would have improved rather than declined. (TR 485-86). Dr. Swenson stated, that in his opinion, nine months was too long of a time for the Claimant to have retained information from the test, even in incidental memory. (TR 486).

      The Claimant also provided the Appeals Counsel new evidence from Dr. Hill and Dr. Swenson concerning the Claimant's ability to do work-related activities. Swenson completed a Medical Source Statement, which indicated that the Claimant had "marked" limitations in his ability to understand and remember short, simple instructions and "moderate" limitations in his ability to carry out short, simple instructions. (TR 488). The Claimant also submitted a Medical Source Statement from Dr. Hill. Dr. Hill indicated that the Claimant had "extreme" limitations

in his ability to understand and remember short, simple instructions and "extreme" limitations in his ability to carry out short, simple instructions. (TR 482).

On December 13, 2005, the Appeals Council denied the Claimant's request for review, stating that the new evidence did not provide a basis for changing the decision of the ALJ. (TR 8).

### III. STANDARD OF REVIEW

The decision of the ALJ must be upheld if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Metz v. Shalala, 49 F.3d 374, 376 (8th Cir. 1995). Substantial evidence is less than a preponderance but enough evidence that a reasonable mind might find it adequate to support the conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). Fines v. Apfel, 149 F.3d 893 (8th Cir. 1998); Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995). Review by this Court extends beyond a limited search for the existence of evidence supporting the Commissioner's decision to include giving consideration to evidence in the record which fairly detracts from the decision. Brockman v. Sullivan, 987 F.2d 1344, 1346 (8th Cir. 1993); Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992); Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991).

Under section 405(g), the Court is to determine whether there is substantial evidence in the record as a whole to support the decision of the Commissioner and not to reweigh the evidence or try the issues de novo. Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Furthermore, a reviewing court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (quoting Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984)). The

8

Court must review the Commissioner's decision to determine if an error of law has been committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992); Nettles v. Schweiker, 714 F.2d 833, 836 (8th Cir. 1983). The Commissioner's conclusions of law are only persuasive, not binding, on the reviewing court. Smith, 982 F.2d at 311; Satterfield v. Mathews, 483 F. Supp. 20, 22 (E.D. Ark. 1979), aff' d per curiam, 615 F.2d 1288, 1289 (8th Cir. 1980). If substantial evidence supports the ALJ's decision, then this Court cannot reverse the ALJ's decision even if the Court would have decided it differently. Smith, 987 F.2d at 1374.

## IV.  DISCUSSION

**A.     New Evidence**

If it is clear that the Appeals Council considered the new evidence but denied review, the Court does not examine this denial. Riley v. Shalala, 18 F.3d 619, 622 (8th Cir. 1994). The ALJ's decision becomes the final action. Mackey v. Shalala, 47 F.3d 951, 953 (8th Cir. 1995). The Court then determines "whether the ALJ's decision is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made." Riley, 18 F.3d at 622. The Court therefore must, decide how the ALJ would have weighed the new evidence. Id. While this Court does not reweigh the evidence, it does consider evidence in the record that detracts from the Commissioner's decision. Murphy, 953 F.2d at 384; Brockman, 987 F.2d at 1346. Having done so, the Court concludes that substantial evidence does not support the ALJ's decision. Put another way, there is not enough evidence that a reasonable mind might find it adequate to support the decision of the ALJ. Fines, 149 F.3d at 893.

The ALJ afforded Dr. Enright's opinion too much weight, afforded Dr. Swenson's opinion too little weight, and erred in not considering Dr. Hill's opinion. The ALJ afforded Dr.

9

Enright's opinion considerable weight because he thought that Dr. Enright considered all of the relevant evidence. (TR 25). The transcript from Dr. Enright's testimony, however, indicates that his interpretation of the evidence, as plaintiff's counsel puts it, is "nonsensical." The record suggests the Dr. Enright based his entire interpretation of Dr. Swenson's report on the statements near the beginning where Dr. Swenson positively recites that the Claimant had the capacity to have the Wechsler Memory Scale III test administered. Dr. Enright's interpretation would suggest that anybody who possesses the ability to take the Wechsler Memory Scale III test then also, inherently, cannot have any struggle whatsoever in their ability to focus and to remember material. Dr. Enright asserts in his testimony that Dr. Swenson's references to the Claimant's ability to understand the test instructions are more dispositive of Dr. Swenson's conclusions than his General Memory Index in the first percentile, but ignores several references and conclusions by Dr. Swenson concerning the Claimant's memory that are scattered throughout the record. (TR 500; 385-89). Dr. Swenson's subsequent clarification of his findings seems to all but rule out Dr. Enright's testimony as valuable, especially since his testimony admittedly is premised on what he thought were Dr. Swenson's true observations. (TR 485-87).

  The new evidence in the form of Medical Source Statements of Dr. Hill and Dr. Swenson cast serious doubt on the ALJ's original decision. (TR 482-84; 488-90). Both Dr. Swenson and Dr. Hill concluded that the Claimant had "marked" or "extreme" restrictions in his ability to understand and remember short, simple instructions. (TR 482; 488). Moreover, Dr. Hill concluded that the Claimant had "extreme" limitations in his ability to carry out such instructions. (TR 482). The vocational expert, whose testimony the ALJ accepted, stated that an

individual who had marked limitation in their abilities to understand, remember, and carry out short, simple instructions would not be able to find work. (TR 518-19).

 The Commissioner argues that the Medical Sources Statements of Dr. Hill and Dr. Swenson, however, should not be afforded much weight, because they were not consistent with the earlier observations of the two doctors.  The Commissioner is incorrect.  The Court concludes that the opinions in the Medical Source Statements may be inconsistent with Dr. Enright's interpretation of Dr. Hill's and Dr. Swenson's earlier observations, but it does not conclude that they are inconsistent with Dr. Hill's and Dr. Swenson's actual observations.  Dr. Swenson indicated that the Claimant had "marked" limitations in his ability to understand and remember short, simple instructions and "moderate" limitations in his ability to carry out short, simple instructions.  (TR 488).  Dr. Hill indicated that the Claimant had "extreme" limitations in his ability to understand and remember short, simple instructions and "extreme" limitations in his ability to carry out short, simple instructions.  (TR 482).  These conclusions do not seem at all inconsistent with their earlier findings.  Both Dr. Hill and Dr. Swenson administered a Wechsler Memory Scale III test, which indicated that the Claimant's Working Memory Index was in the first percentile.  Dr. Hill stated in 2003, "Jamie struggles with focusing attention and remembering material."  (TR 478).  In 2003, Dr. Swenson stated "immediate and short term memory are significantly below average."  (TR 389).

 The Medical Source Statements put the other opinions of Dr. Hill and Dr. Swenson into context.  They appear to indicate the weight that the ALJ assigned to Dr. Enright's opinions may have been improper.  Should the ALJ afford the opinions of Dr. Swenson, and particularly, Dr. Hill with greater weight considering this new evidence, it is possible that his conclusions would

be different, especially considering the testimony of the vocational expert, who testified that an individual with marked limitation in their abilities to understand, remember, and carry out short, simple instructions, would not be able to find work.  This could alter the ALJ's determination that the Claimant retains the residual functional capacity to understand, remember and carry out detailed instructions.  See TR 27.  Such a revelation could alter the ALJ's finding that the Social Security Administration met its burden to show that there are existing jobs in the national economy consistent with the Claimant's modified residual functional capacity.  See TR 27.

**B.     The Claimant's Credibility**

The ALJ also found the Claimant's testimony to be not credible.  The Court concludes that any lack of credibility on the part of the Claimant does not satisfy the substantial evidence test to support the ALJ's decision.  If the Medical Source Statement of Dr. Hill is to be accepted, the record indicates that there would be no jobs in the national economy for the Claimant, regardless of his credibility.

Accordingly, it is hereby

ORDERED that the Commissioner of Social Security's decision terminating benefits for the Claimant is reversed and remanded for reconsideration consistent with this order.

Dated this 20th day of March, 2007.

         BY THE COURT:

         /s/ *Andrew W. Bogue*
         ANDREW W. BOGUE
         SENIOR DISTRICT JUDGE